[No. 1,977.]

JOAQUIN CASTRO v. JOHN TENNENT, WILLIAM A. SENTER, PHILIP ROACH, E. FROST, W. B. RODGERS, AND W. K. BETHEL.

CONSTRUCTION OF DESCRIPTIVE CLAUSE IN A DEED.—A deed from C. and wife described the premises conveyed as "all the undivided half of the right, title, and interest of the said parties of the first part of, in, and to that certain tract and parcel of land lying and being in the State of California and County of Santa Clara, known by the name of the Rancho Santa Teresa, the interest therein conveyed being the same acquired by the parties of the first part as heirs of José Joaquin Bernal and his wife, Josefa Sanchez de Bernal, deceased:" *Held*, that there was no repugnancy in the descriptive clause of the deed, and that it appeared on the face thereof that it was the intention of the grantors to convey only such interest as they had acquired as the heirs of Bernal and his wife. *Held further*, that the deed conveyed the separate interest which the wife of Castro, one of the grantors, had acquired as the heir of Bernal and wife, and that it did not convey the interest which one of the grantors, Joaquin Castro, had acquired in the Rancho Santa Teresa by purchase.

DEFINITION OF WORD "HEIR."—The word "heir" is not limited in its meaning to one to whom an estate of inheritance has descended from his immediate ancestor, but a person is the heir of one from whom he has inherited by several successive descents.

APPEAL from the District Court of the Third Judicial District, Santa Clara County.

José Joaquin Bernal died in 1834, seized in fee of the Rancho Santa Teresa, leaving surviving him eleven children, his sole heirs at law, among whom Marcellina Bernal was one. Marcellina afterwards intermarried with Julio Valencia, and there was, issue of this marriage, five children, two of whom were named Maria Eusebia Valencia and Antonio Valencia. In 1847 said Marcellina died intestate, seized in her own right as owner in fee of one undivided eleventh of said rancho, leaving surviving her said husband, Julio Valencia, and her said five children. In 1848 said Antonio died intestate, without issue, and his father, Julio Valencia, inherited from him an undivided one fifth of the interest left

by his wife, Marcellina. Said Maria Eusebia Valencia, in 1849, intermarried with the plaintiff, Joaquin Castro, and after the marriage, and in 1858, said Julio Valencia conveyed to him all his interest in the rancho. This gave the plaintiff, Joaquin Castro, an undivided fifty-fifth in the rancho, and his wife, Maria Eusebia Valencia, the same interest. While they owned these interests the deed mentioned in the opinion was given. This suit was brought to recover the undivided fifty-fifth claimed by the husband, Joaquin Castro, which he had acquired by purchase from Julio Valencia. The Court below rendered judgment for the defendants, and the plaintiff appealed.

The other facts are stated in the opinion.

*J. A. Moultrie,* for Appellant.

There can be no question that the grantor in a deed has the right to control certain expressions used in his deed, by others inserted for that purpose. In fact that rule of construction is carried so far as to allow a party to set aside the general sense of the words he uses, and, for the purposes of the deed in question, to assign to them another and different meaning. (*Morrison* v. *Wilson,* 30 Cal. 44.) "The construction of a deed should be according to the entire instrument, and any words therein that appear repugnant to the other parts of it, and to the general intention of the parties, will be rejected." (*Gibson* v. *Bogg,* 28 Mis., 7 Jones, 478.) "Arbitrary rules of construction are not to be invoked if the intention of the parties can be plainly discovered without their aid." (*Kimball* v. *Semple,* 25 Cal. 449.) In fact it is well settled that the effect of general words will be confined where an intent to confine it can be collected from the context. (*Munro* v. *Alaise,* 2 Johnson Ch., 320; 2 Smith, Leading Cases, 517.) Too much stress is not to be laid on the strict and precise meaning of words when the intention is manifest; hence the power which the Court exercises in

marshalling the words of a written instrument so as to carry the intention into effect. (2 Smith L. Cases, 516.) And so it is holden in numerous cases, that in the construction of a deed the particular intent will govern the general intent. (*Mesick* v. *Sunderland*, 6 Cal. 316; *Dawes* v. *Prentice*, 16 Pick. 435 ; *Stanly* v. *Green*, 12 Cal. 162; 2 Parsons on Contracts, 72.)

To apply the foregoing doctrine to this case, the mind will not for a moment hesitate to arrive at the conclusion that the intention of Mrs. Castro was to convey her interest in the rancho, and that of her husband to facilitate her in so accomplishing that object. The fact that the plural number is used in speaking of interests and inheritances cannot militate against the construction the appellant contends for, when it is remembered that Castro, the husband, was by the statute required to join in the conveyance of his wife's estate in order to give it any validity.

A person seized of three undivided fourth parts of a farm conveyed one equal moiety of the farm, describing it by metes and bounds, and added the words in his conveyance, "together with all the estate, right, title, and interest which he, the grantor, hath to the above described premises;" held that these general words were not to be construed as extending the grant beyond the one moiety of the premises. (*Jackson* v. *Stevens*, 16 Johnson, 110.)

In *Parks* v. *Watson*, 29 Mis., 8 Jones, 108, the doctrine is applied to a case standing on all fours with the one at bar. A party had acquired two distinct interests in certain premises, and in his conveyance sold "all his interest in the whole tract," and then added " being the same property conveyed," etc., reciting only one of the sources of title. It was held that only the particular estate passed by the deed. (*King* v. *Little*, 1 Cush. 436; *Clamorgan* v. *Lane*, 9 Mo. 446.)

*F. E. Spencer* and *J. A. Moultrie*, also for Appellant.

We submit that the restrictive clause is not to be read to have no meaning; that it was not inserted for a vain or useless purpose. The grantor in a deed has a right to control certain expressions used in his deed, by others inserted for that purpose. (*Morrison* v. *Wilson*, 30 Cal. 44; *Gibson* v. *Bogg*, 28 Miss. 478; *Kimball* v. *Semple*, 25 Cal. 449.)

In fact it is well settled that the effect of general words will be confined where an intent to confine it can be collected from the context. (*Munro* v. *Alaise*, 2 Johnson Ch., 320; 2 Smith, Leading Cases, 517.)

Too much stress is not to be laid on the strict and precise meaning of the words when the intention is manifest, hence the power which the Court exercises in marshaling the words of a written instrument so as to carry the intention into effect. (2 Smith, L. Cases, 516.)

And so it is holden in numerous cases, that in the construction of a deed the particular intent will govern the general intent. (*Mesick* v. *Sunderland*, 6 Cal. 316; *Dawes* v. *Prentice*, 16 Pick. 435; *Stanly* v. *Green*, 12 Cal. 162; 2 Parsons on Contracts, 72.)

*Patterson, Spencer & Moultrie*, also for Appellant.

*S. O. Houghton*, for Respondents.

The grantors had no interest acquired as heirs of José Joaquin Bernal, and the words of the second description could with just as much propriety be construed to defeat the conveyance entirely, as to allow to them the effect of limiting the deeds to conveyances of the interest of the wife only. Neither can be done without disregarding plain and well settled rules which govern the construction of deeds. Counsel contends that the meaning of the second description is to the effect following: This deed is intended to convey only an undivided one half of the interest in said rancho

acquired by the said Maria Eusebia Valencia de Castro, as heir of José Joaquin Bernal.

We say, that even though the grantors had used these words, the effect would be the same, as they would be repugnant to the previous words. It would be equivalent to the grantors saying: "My wife and I convey to you (the grantee) an undivided one half of the interest we both have; but we intend to convey to you only one half of the interest my wife inherited." The grantors convey "all of" the undivided half of their interest; and instead of using any words explanatory of the language of the description, they add, by way of further description, one which is totally repugnant to that which precedes it, and it should therefore be rejected. Upon this question counsel have cited a case which is an authority for us. (28 Miss. 478.)

The second description is but a false demonstration. As soon as there is an adequate and sufficient description, with convenient certainty of what is intended to pass by the particular instrument, any subsequent erroneous addition will not vitiate it. (*Llewellen* v. *Earl of Jersey*, 11 M. & W. 189.)

In *Swift* v. *Eyers*, Cro. Car. 546, the rule is stated to be that the addition of a false thing shall never hurt the grant, for the addition of a falsity shall never hurt where there is any matter of certainty before. This rule is applied in *Howell* v. *Saule*, 5 Mason, C. C. R. 412; in *Moore* v. *Griffin*, 22 Maine, 354, 355; and in *Cutter* v. *Tuft*, 3 Pick. 277–279.

By CROCKETT, J., NILES, J., concurring:

The following well known rules for construing deeds have been too long and too firmly established to be now lightly departed from, viz: First—That doubtful clauses in the deed

are to be construed most strongly against the grantor, and as favorably to the grantee as the language, construed in the light of the surrounding facts, will justify. Second—That when there are two descriptions of the property or estate granted, one of which is certain, definite, and free from ambiguity, that shall prevail over another description less certain and definite, or which is in any degree ambiguous. Third—That the whole instrument is to be consulted, and all its provisions reconciled, if possible; but if two of its clauses are so repugnant that they cannot be reconciled, the first shall prevail and the last shall be rejected. Fourth—That when the language of the deed is explicit and free from ambiguity, extrinsic facts cannot be averred or proved to show that the intention of the parties was different from that which the words of the deed import. We must be guided by these rules in construing the deeds under review in this case. The plaintiff and his wife, on the 31st July, 1865, jointly made, executed, and delivered two separate deeds to two several grantees, respectively, in each of which the interest or estate conveyed is described as follows: "All of the undivided half of the right, title, and interest of the said parties of the first part of, in, and to that certain tract and parcel of land lying and being in the State of California and County of Santa Clara, known by the name of the Rancho Santa Teresa, the interest therein conveyed being the same acquired by the parties of the first part as heirs of José Joaquin Bernal and his wife, Josefa Sanchez de Bernal, deceased."

There could be no serious controversy as to the estate or interest which was intended to be conveyed, if only the first descriptive clause had been inserted in the deeds, to wit: "All of the undivided half of the right, title, and interest of said parties of the first part of, in, and to that certain tract and parcel of land lying and being in the State of California and County of Santa Clara, known by the name of

the Rancho Santa Teresa." This description would have been certain and entirely free from ambiguity, and prima facie would have comprehended not only any joint interest held by the grantors, but also the several interest of each.

It has been suggested in argument that such a description includes only the joint estate or interest of the grantors, but this construction is hypercritical and is too narrow and technical. In a large majority of cases such a construction would defeat the real intention of the parties. If there be several adverse claimants to separate undivided interests in a tract of land, and if all the claimants unite in a joint deed to a stranger, conveying all their right, title, and interest in and to the lands, it would not be seriously contended, I apprehend, that nothing passed by the deed, because the grantors had no joint interest in the land. I have not the slightest doubt that if the first descriptive clause only had been inserted in these deeds it would prima facie have included all the interest of the grantors, whether joint or several, and from whatever source derived. The only difficulty in construing the deeds, therefore, arises from the second descriptive clause, which describes the interest conveyed as the same acquired " by the parties of the first part as heirs of José Joaquin Bernal and his wife, Josefa Sanchez de Bernal, deceased." There is not apparent on the face of the deeds any conflict or discrepancy between the two descriptions. On the contrary, the last description would appear to have been added as only explanatory of the first. By the first description the grantors undertook to convey all their interest, whether joint or several, in the rancho, and the last description was apparently added for the purpose of defining more clearly what that interest was. In its legal effect the language of the deeds is that the grantors convey to the grantees all their interest, whether joint or several, in the rancho, being the same interest which they acquired as heirs of Bernal and his wife. This will become apparent

if we transpose the two descriptive clauses and construe the entire sentence as a whole and not by fragments. By reading the last clause as though it stood first in order, we find that the grantors declare thereby that they acquired as heirs of Bernal and his wife an interest in the land, and that it is this interest which is intended to be conveyed by the deed; and if we read the first descriptive clause as though it immediately succeeded in the same sentence, declaring that the grantors thereby conveyed all of the undivided half of their right, title, and interest in and to the rancho, the intent becomes obvious beyond cavil. The parties would thereby have explicitly interpreted their own language, and have declared in express terms what their intention was; and when the instrument itself in express terms declares the intention of the parties, there is but little room for construction. If the sentence had been thus framed it might not have been technically accurate in its language. After reciting that the grantors, as heirs of Bernal and his wife, had acquired an interest in the rancho which it was their intention to convey by the deed, it would not have been very accurate in the next succeeding clause to have conveyed *all* their interest in the rancho. Nevertheless it would have been apparent that they intended to convey only the interest which they had acquired as heirs, because the deed would have so declared in terms; and if it be the duty of the Court, in construing deeds, first to ascertain the intention of the parties by the deed itself, if possible, and then to give effect to it, I apprehend that if the deed had been framed as here indicated, we should have no difficulty in holding that the only interest which passed' was that which the grantors acquired as heirs of Bernal and his wife. But is not this intent quite as apparent from the deeds as they now stand? Have not the parties interpreted their own language and expressly declared its meaning when they say that the interest thereby conveyed is the same " acquired by

the parties of the first part as heirs of José Joaquin Bernal and his wife, Josefa Sanchez de Bernal, deceased?" In the second clause they expressly declare the meaning of the first, and I know of no rule of law which forbids the parties to an instrument to interpret it for themselves by apt language inserted in the instrument itself. In such cases there is no real repugnancy, because what might otherwise seem to be repugnant is reconciled on the face of the instrument itself. If a grantor in a deed should declare by the first descriptive clause that he conveyed all his right, title, and interest in a particular tract of land, and should follow this up by declaring in the next clause in the same sentence that what he meant by the preceding clause was, not that he conveyed his entire estate in the land, but only such claim or title as he derived from a specified source, reserving to himself whatever other title he had, this would not be a case of repugnancy, but the second clause would be merely explanatory of the first, declaring the sense in which the words were used, and the meaning which the parties intended should attach to them. This is precisely, in effect, what the parties in this case have done. They have declared in the second clause the sense in which the words "all of the undivided half of the right, title, and interest of the said parties of the first part," is to be understood, and when parties thus declare the meaning of their own words, and the sense in which they are used, I know of no authority in the Courts to give them a different meaning. My construction of the deeds, therefore, is, that it was the intention of the grantors to convey only such interest as they had acquired as heirs of Bernal and his wife, and that there is no repugnancy in the deeds. But the defendants claim that the plaintiff and his wife had in fact acquired no interest whatever in the property as heirs of Bernal and his wife, and that the second descriptive clause is, therefore, false,

and is ineffectual to explain or qualify the first clause, or to diminish the estate thereby granted.

It is not pretended that the plaintiff and his wife had any joint interest in the land, nor is it claimed by either side that the plaintiff had any interest which he acquired as an heir of Bernal and his wife, or either of them. The inquiry on this branch of the subject is, therefore, narrowed down to the question whether the wife acquired her interest as an heir of Bernal and his wife. The word "heir" is frequently used to denote a person to whom an estate of inheritance has descended from his immediate ancestor. But it has also a wider signification, and Lord Coke defines an heir to be " he to whom lands, tenements, or hereditaments, by the act of God and right of blood do descend of some estate of inheritance." It was evidently in its broader and more liberal sense that the word heirs was used in the second descriptive clause of these deeds, at the date of which there had been one or more intermediate successions from Bernal, which fact was, doubtless, known to the parties, and when the deeds declare that the interest conveyed by the plaintiff and his wife was that which they acquired as heirs of Bernal and his wife, there can be no doubt that the only meaning intended to be attached to this phrase was that the estate came to them, not by purchase, but by one or more successive descents from Bernal. The second descriptive clause was therefore true, in so far as it includes the assertion that the wife acquired her interest as an heir of Bernal. It is contended, however, that the deed does not assert that the wife acquired any separate interest as an heir of Bernal, but only that the two grantors acquired a joint interest as heirs of Bernal and his wife. As we have seen already, the first descriptive clause, though ostensibly conveying only the joint interest of the grantors, was, nevertheless, prima facie effectual to convey the several interests of each. This conclusion was reached only by treating the phrase " all of the undivided

half of the right, title, and interest of the parties of the first part " as collective, and, therefore, including the joint interest of the grantors, and also as distributive, and, therefore, embracing also the several interests of each; and, by a parity of reasoning, when the second descriptive clause describes the interest conveyed as that which the grantors acquired as heirs of Bernal and his wife, it is broad enough to include not only a joint interest thus acquired, but also a several interest of either, which was so acquired from either Bernal or his wife.

I am, therefore, of opinion that by legal intendment the second descriptive clause in the deed must be held to include the assertion that the title of the wife was acquired as an heir of Bernal, and it is shown by the findings that the assertion was true in the sense in which the word "heirs" was used in that clause. Assuming this position to be correct, and reading the second descriptive clause as if it had defined the interest conveyed as that which the wife acquired through her mother, by descent from Bernal, as the plaintiff claimed it should be read, the defendant claims that it is repugnant to the first clause, and should, therefore, be rejected. This point has already been adverted to; but in addition to what has been said, it may be observed that in determining the question of repugnancy both clauses must be read in the light of the surrounding facts, and of the law which was applicable to the transaction. Whilst the first clause standing alone and unexplained would be clearly sufficient to pass any interest of the husband and wife, whether joint or several, it would, nevertheless, have been an appropriate method, under our statute, of conveying the separate estate of the wife. Though the husband may not be required to unite in the deed as one of the formal grantors, he must, nevertheless, assent to it by uniting in its execution, and the usual practice is to unite him as a joint grantor with his wife. If the husband claimed no interest whatever in

this land, a joint quitclaim deed by the husband and wife for the wife's interest would very naturally, and not inappropriately, have described the interest conveyed, precisely as it was described in the first clause of these deeds. Inasmuch, therefore, as the language of the first clause might have been appropriately employed to convey either a joint interest of the husband and wife or the separate estate of the wife, in either of which cases the husband would have been a proper party to the conveyance, I think it was competent for the parties to declare, as, in effect, they have done by the second clause, that the interest intended to be conveyed by the first was that of the wife alone. I am, therefore, of opinion that no other interest passed by the deed, and that the judgment should be reversed and the cause remanded for a new trial; and it is so ordered.

RHODES, J., and BELCHER, J., concurring specially:

We concur in the judgment, and in so much of the reasoning as holds that only the interest of the wife passed by the deed.

Mr. Chief Justice WALLACE, being disqualified, did not sit in this case.